UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| J. MICHAEL ROBERTSON AND STEPHANIE NELSON<br><br>Plaintiffs<br><br>v.<br><br>J&L MARKETING INC. AND SCOTT JOSEPH<br><br>Defendants | CIVIL ACTION NO. 3-12-cv-306-H<br><br><br>COMPLAINT AND JURY DEMAND |

**COMPLAINT AND JURY DEMAND**

Plaintiffs, J. Michael Robertson ("Robertson") and Stephanie Nelson ("Nelson") (collectively, "Plaintiffs"), bring a complaint for relief against J&L Marketing Inc. ("J&L") and Scott Joseph ("Joseph") under KRS 337.011 et seq (Count I); Mass. Gen. Law. c. 149 s. 148B (Count II); Mass. Gen. Law c. 151, §§ 1A-1B (Count III); Mass. Gen. Law. c. 149 § 148A (Count IV); FLSA Overtime (Count V); FLSA Retaliation (Count VI); Computer Fraud and Abuse Act, 18 U.S.C. s. 1030 (Count VII); and Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (Count VIII).

## INTRODUCTION

1. This is an action brought by two former employees of J&L, Robertson and Nelson. The gravamen of their complaint is that for years, J&L misclassified them as independent contractors and subsequently denied them statutory overtime and other benefits of employment. The plaintiffs also allege that after they notified their employer of these violations, the company's president, Joseph, retaliated against them by directly or indirectly hacking into Nelson's LinkedIn account and informing current contractors of J&L not to have any contact with plaintiffs.

## PARTIES

2. Robertson is a citizen of the Commonwealth of Kentucky and resides at 7206 Hunters Runs Drive, Prospect, KY 40059. He worked as a Business Growth Specialist ("BGS") for J&L for nearly 17 years.

3. Nelson is a citizen of the Commonwealth of Massachusetts and resides at 16 Appleton Street, Boston, MA 02116. She worked as a BGS for J&L for nearly 10 years.

4. J&L is a Kentucky company with a principal place of business at 2100 Nelson Miller Parkway Louisville, KY 40223. J&L is a direct-marketing company that sells promotions to automotive dealerships.

5. Joseph is the President of J&L Marketing. In this capacity, he has acted directly or indirectly in the interest of J&L in relation to its employees, and therefore, has been an employer within the meaning of Section 3(d) of the Fair Labor Standards Act, 29 U.S.C. 203(d), and Massachusetts General Laws c.149 §148B(d) and c.149 §148.

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because plaintiffs assert claims under the laws of the United States, and the amount in controversy exceeds $25,000.

7. This Court has supplemental jurisdiction of Robertson and Nelson's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue in this court is proper as Robertson lives in, and J&L does business in Jefferson County, Kentucky.

## FACTS

9. J&L sells sales promotions to auto dealerships. In order to carry out this central function, J&L tasks BGSs, like the plaintiffs, with marketing and selling those promotions.

10. Although J&L hired Robertson as an employee, it began to classify him as an independent contractor in 1998.

11. J&L classified Nelson as an Independent Contractor when she joined J&L in 2002.

12. Plaintiffs' sole compensation from J&L was a commission based upon a percentage of revenues they generated for J&L.

13. Although J&L classified Nelson and Robertson (as well as other BGSs) as independent contractors, the behavioral and financial control manifested over them demonstrates that they were the Defendants' employees. Such control includes, but is not limited to instructing and requiring plaintiffs to:

   a. Attend web-ex online meetings;

3

b. Compose a weekly report recapping the number of presentations that the Plaintiffs made for each of J&L's products and the number of products that were sold;

c. Attend mid-year and year-end meetings;

d. Comply with J&L's list of "10 Non-Negotiables";

e. Give up certain customers with whom they had prior, and often long-standing relationships;

f. Use J&L produced and/or approved marketing materials;

g. Limit use of PowerPoint presentations to those developed and approved by J&L;

h. Follow dress code at J&L sponsored meetings;

i. Execute a "code of conduct" agreement in anticipation of the 2012 NADA meeting;

j. Follow J&L's directions regarding attending company meetings;

k. Solicit "Driving Sales" review from customers;

l. Sell a certain number of services clinics or risk having territory taken away;

m. Use a J&L email address and a J&L signature on each sent email;

n. Distribute J&L business cards;

o. Use J&L chosen Promotion Coordinators for events;

p. Use J&L lead companies to generate lists for sales promotions;

q. Use J&L's vendors to purchase gifts for promotions;

r. Submit all the responsibility for invoicing customers to J&L;

4

      s. Be available to work for J&L on a more-than-full-time basis, and;

      t. Attend J&L trainings.

      u. Be available to customers during personal vacations.

14. J&L also:

      a. Paid for the office out of which Robertson worked at J&L headquarters;

      b. Paid for Nelson's Massachusetts offices until she began working out of her home;

      c. Paid for some of the equipment and supplies used by plaintiffs;

      d. Reimbursed plaintiffs for certain business expenses;

      e. Prohibited plaintiffs from providing services to competing entities; and

      f. Has attempted to prevent plaintiffs from soliciting J&L clients for 18 months following their separation from the company.

15. Plaintiffs performed work which is in the usual course of J&L's business (marketing sales promotions).

16. Plaintiffs do not have an independently established trade or business in that they not only were dependent upon J&L for their work, but they were prohibited from working for any company that competed with J&L during the course of their employment.

17. J&L has BGS "independent contractors" and BGS "employees" working for it, performing nearly identical tasks. The primary difference between the independent contractor BGSs and the employee BGSs is the manner in which J&L compensates them.

**Plaintiffs were non-exempt employees entitled to overtime**

18. At all times during the course of their employment with J&L, Plaintiffs sold promotional sales products for J&L.

19. More than 75% of the time, Robertson performed his work inside J&L's corporate headquarters in Louisville, Kentucky.

20. More than 75% of the time, Nelson performed her work in Massachusetts, from either her home office or from an office paid for by J&L.

21. J&L did not pay plaintiffs a salary.

22. Nelson never had any managerial or supervisory responsibilities during her employment at J&L.

23. Since Robertson began working for J&L, his only managerial/supervisory responsibilities were as a "Team Leader," which role he served during parts of 2010 and 2011.

24. Robertson's role as a "Team Leader" represented less than 7% of the time he spent working for J&L.

25. Plaintiffs were non-exempt employees entitled to time and one half for hours worked in excess of forty per week.

26. Plaintiffs routinely worked more than 40 hours per week throughout their careers at J&L.

27. Defendants failed to pay Plaintiffs time and one half for all work performed in excess of 40 hours per week.

28. On May 9, 2012, the Office of the Attorney General of the Commonwealth of Massachusetts issued Nelson a letter authorizing her "private right of action" against J&L and Joseph.

**Plaintiffs were denied benefits afforded to employees of J&L**

29. As a result of their misclassification, Plaintiffs were denied certain benefits of employment, including but not limited to:

   a. Statutory overtime;

   b. Paid vacation;

   c. Payment of the employer's share of payroll taxes;

   d. Employer contributions to health and dental plans;

   e. Short term disability and/or parental leave; and

   f. Employer contributions to retirement savings plans.

**J&L retaliated against plaintiffs when they notified Joseph of J&L's wage violations**

30. Nelson established a "LinkedIn" account in September 2007.

31. Nelson's LinkedIn account belonged to her, not to J&L.

32. Nelson accessed her LinkedIn account from an Internet Provider address located in Boston, Massachusetts every time she logged into LinkedIn prior to February 22, 2012.

33. Nelson did not authorize anyone from J&L to access her LinkedIn account.

34. On February 22, 2012, hours after Nelson sent a demand letter to Joseph asserting her rights under the Fair Labor Standards Act and the wage laws of

7

Massachusetts, an individual under the control or direction of J&L impersonated Nelson and hacked into and then deactivated her LinkedIn account.

35. The individual under the control or direction of J&L that impersonated Nelson and hacked into and then deactivated her LinkedIn account accessed Nelson's LinkedIn account on 22 separate occasions on February 22, 2012.

36. J&L retaliated against Nelson because she complained that J&L had misclassified her as an independent contractor and had failed to pay her overtime.

37. On May 11, 2012, J&L sent a letter (hereafter, the "May 11, 2012 letter") to all Promotion Coordinators associated with the company regarding state court litigation concerning Nelson and Robertson.

38. In the May 11, 2012 letter, J&L asserted that, pursuant to the plaintiffs' Independent Contractor agreements, they had agreed to not contact current J&L employees and independent contractors (PCs) after their relationship with J&L terminated.

39. J&L instructed its Promotion Coordinators to ignore and/or not to respond to any email, text, or contact through social media sites such as Facebook, Twitter or LinkedIn from Nelson or Robertson and to inform the company "right away" if Nelson or Robertson attempted to contact them.

40. Nelson's Independent Contractor agreement did not contain any restriction on her right to contact or communicate with J&L employees and/or contractors following her separation from the company.

41. Robertson's Independent Contractor agreement did not contain any restriction on his right to contact or communicate with J&L employees and/or contractors following his separation from the company.

### COUNT I: VIOLATION OF KRS 337.010 et seq (AS TO ROBERTSON)

42. The allegations contained in Paragraphs 1-41 above are hereby adopted and realleged as if fully set forth herein.

43. The Kentucky Wages and Hours statute, KRS 337.010 et seq., requires employers to award their non-exempt employees with certain benefits, including overtime pay.

44. Robertson was a non-exempt employee of J&L.

45. Robertson routinely worked more than 40 hours per week.

46. J&L did not pay Robertson overtime.

47. Robertson was damaged as a result of J&L's failure to pay him overtime.

### COUNT II: VIOLATION OF THE MASSACHUSETTS INDEPENDENT CONTRACTOR STATUTE BY J&L AND JOSEPH (AS TO NELSON)

48. The allegations contained in Paragraphs 1-47 above are hereby adopted and realleged as if fully set forth herein.

49. Pursuant to the state law requirements as set forth in Mass. Gen. Laws. c. 149 § 150, Nelson filed her statutory state law claim with the Office of the Attorney General and has received a right to sue letter.

50. The actions of Defendants J&L and Joseph as set forth above are in violation of the Massachusetts Independent Contractor Statute, Mass. Gen. Law c. 149 § 148B, which cause of action is assertable pursuant to Mass. Gen. Law. ch. 149 § 150.

51. As a result of J&L's misclassification of Nelson as an independent contractor, she suffered damages.

### COUNT III: DENIAL OF OVERTIME IN VIOLATION OF MASS. GEN. LAW c. 151, §§ 1A-1B BY J&L AND JOSEPH (AS TO NELSON)

52. The allegations contained in Paragraphs 1-52 above are hereby adopted and realleged as if fully set forth herein.

53. The actions of Defendants J&L and Joseph as set forth above are in violation of the Massachusetts wage and hour laws, Mass. Gen. Law c. 151, §§ 1A-1B.

54. Nelson incurred damages as a result of J&L's violation of Mass. Gen. Laws c. 151 §§ 1A-1B.

### COUNT IV: RETALIATION IN VIOLATION OF MASS. GEN. LAW c. 149, § 148A BY J&L AND JOSEPH (AS TO NELSON)

55. The allegations contained in Paragraphs 1-54 above are hereby adopted and realleged as if fully set forth herein.

56. The actions of Defendants J&L and Joseph as set forth above are in violation of the Massachusetts wage and hour laws, Mass. Gen. Law c. 149, § 148A.

57. Nelson incurred damages as a result of J&L's violation of Mass. Gen. Laws c. 149, § 148A.

### COUNT V: DENIAL OF OVERTIME IN VIOLATION OF THE FLSA BY J&L AND JOSEPH

58. The allegations contained in Paragraphs 1-57 above are hereby adopted and realleged as if fully set forth herein.

59. The actions of Defendants J&L and Joseph as set forth above are in violation of the overtime provision of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

60. Plaintiffs incurred damages as a result of J&L's violation of the Fair Labor Standards Act, 29 U.S.C. §§201-219.

## COUNT VI: RETALIATION IN VIOLATION OF THE FLSA BY J&L AND JOSEPH

61. The allegations contained in Paragraphs 1-60 above are hereby adopted and realleged as if fully set forth herein.

62. The actions of Defendants J&L and Joseph as set forth above are in violation of the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

63. Plaintiffs incurred damages as a result of J&L's violation of the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

## COUNT VII: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030 (AS TO NELSON)

64. The allegations contained in Paragraphs 1-63 above are hereby adopted and realleged as if fully set forth herein.

65. Nelson did not authorize anyone under the control or direction of J&L to access her LinkedIn account.

66. Upon information and belief, on February 22, 2012, an individual under the control or direction of J&L impersonated Nelson to access and deactivate her LinkedIn account.

67. J&L's actions violated 18 U.S.C. §1030.

68. J&L, knowingly and with intent to defraud, accessed a protected computer without authorization, or exceeded authorized access, and by means of such conduct furthered its intended fraud and caused Nelson damage in an amount exceeding $5,000.

### COUNT VIII: EMPLOYMENT RETIREMENT INCOME SECURITY ("ERISA"), 29 U.S.C. §1132

69. The allegations contained in Paragraphs 1-69 above are hereby adopted and realleged as if fully set forth herein.

70. The plaintiffs did not exhaust the administrative remedies provided for by ERISA because it would have been futile to do so.

71. The actions of Defendants J&L and Joseph as set forth above are in violation of ERISA, 29 U.S.C. §1132.

72. Plaintiffs incurred damages as a result of J&L's violation of ERISA, 29 U.S.C. §1132.

**WHEREFORE**, plaintiffs respectfully request that this court grant them compensatory damages; statutory doubling and trebling of damages under the FLSA, Kentucky Revised Statutes and Massachusetts wage laws, respectively; reasonable attorneys' fees and costs; pre-judgment and post-judgment interest; and any and all other relief this Court deems just.

Respectfully submitted,

/s/ _R. Kenyon Meyer_
R. Kenyon Meyer
**DINSMORE & SHOHL LLP**
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Telephone: (502) 581-8000
Facsimile: (502) 581-8111

*Counsel for Plaintiffs J. Michael Robertson and Stephanie Nelson*

*Of Counsel:*
Allyson E. Kurker, Esq.
KURKER LAW
427 Elm Street
Concord, Massachusetts 01742
Telephone: (978) 254.5487
Facsimile (815) 301-8893
*Counsel for Plaintiffs J. Michael Robertson and Stephanie Nelson.*

929941v1
74002-1

13